UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONNA LAIRD** | * CIVIL NO. 3:25-CV-00350-JWD-SDJ |
| | * |
| | * DISTRICT JUDGE |
| **VERSUS** | * JOHN W. DEGRAVELLES |
| | * |
| | * MAGISTRATE JUDGE |
| **CONSTITUTION HOTEL, LLC D/B/A** | * SCOTT D. JOHNSON |
| **COMFORT INN UNIVERSITY AREA** | * |
| **AND CHOICE HOTELS** | * JURY TRIAL DEMANDED |
| **INTERNATIONAL, INC.** | * |

**************************************************************************

**REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS
BY CHOICE HOTELS INTERNATIONAL, INC.**

*MAY IT PLEASE THE COURT:*

Defendant, Choice Hotels International, Inc. ("Choice") respectfully submits this Reply Memorandum in support of its Rule 12(b)(6) Motion to Dismiss (Doc. 27) and in response to the Opposition filed by Plaintiff (Doc. 29). In addition to failing to comply with Fed. R. Civ. P. 10 (the Opposition lacks a case caption) and Fed. R. Civ. P. 11 (the Opposition is not signed), the Opposition contains a total of twenty (20) end-notes, of which eight (8) are never cited in the body of the Opposition.[1] Additionally, the Opposition relies upon documents (Docs. 29-1 and 29-2), which were not annexed to, nor referenced in, Plaintiff's complaint. Finally, Plaintiff bizarrely discusses AI Hiring Tools and Algorithmic Bais, which is completely immaterial to this matter.

More fundamentally, Plaintiff fails to articulate how, even if presumed true, the allegations against Choice in her complaint would make Choice—as franchisor—responsible or liable for damages as result of one of Choice's franchisees. Simply put, Plaintiff has not, and cannot, state

---

[1] Curiously, in addition to including eight end notes never cited in the body of the Opposition, the end notes are also not in numerical order throughout the body of the Opposition. For example, the first end note cited in the body of the Opposition of End Note 4 on page 3. Then, on page 5, there is a jump from End Note 3 to End Note 8. On page 6, the Opposition jumps back to End Note 4.

of cause of action against Choice—as franchisor—due to alleged discrimination during a hiring process by one of Choice's franchisees. Lastly, contrary to Plaintiff's suggestion, any LUTPA claim against Choice arising from the alleged actions by Choice or its franchisee are long prescribed; but, even if her LUTPA claim was suspended, her complaint fails to allege sufficient facts to state a cause of action against Choice under LUTPA.

A. **Summary of Plaintiff's End Notes**

The following is a summary/outline of the end notes contained in Plaintiff's Opposition:

1. End Note 1 links to Choice's 2017 Form 10-K. This document was also attached to Plaintiff's Opposition as Exhibit 1 (Doc. 29-1). As discussed below, Choice objects to the submission of this exhibit.

2. End Note 2 also links to Choice's 2017 Form 10-K. This document was also attached to Plaintiff's Opposition as Exhibit 1 (Doc. 29-1). As discussed below, Choice objects to the submission of this exhibit.

3. End Note 3 links to Choice's website. Choice objects to Plaintiff's reference to and reliance on information on Choice's website as (1) such information was not attached to nor referenced in Plaintiff's complaint and (2) the website link is not authenticated and is otherwise hearsay.

4. End Note 4 links to a Dropbox folder purporting containing a Code of Ethics & Conduct published by Choice. This document was also attached to Plaintiff's Opposition as Exhibit 2 (Doc. 29-2). As discussed below, Choice objects to the submission of this exhibit.

5. End Note 5 is never cited in the body of Plaintiff's Opposition, but links to a copy of 47 U.S.C. 12112 from the University of Cornell's website. 47 U.S.C. 12112 is referenced twice on page 4 of the Opposition.

6. End Note 6 is never cited in the body of Plaintiff's Opposition, but links to a copy of 47 U.S.C. 12111 from the University of Cornell's website. Curiously, 47 U.S.C. 12111 is never cited in the body of Plaintiff's Opposition.

7. End Note 7, like 5, is never cited in the body of Plaintiff's Opposition, but links to a copy of 47 U.S.C. 12112 from the University of Cornell's website. 47 U.S.C. 12112 is referenced twice on page 4 of the Opposition.

8. End Note 8 links to a purported copy of an Oregan Court of Appeal decision in *Miller v. McDonald's Corp.*, 150 Or. App. 274, 280, 945 P.2d 1107, 1110 (1997), from the website Justia, with the following text highlighted:

   > A number of other courts have applied the right to control test to a franchise relationship. The Delaware Supreme Court, in Billops v. Magness Const. Co., 391 A.2d 196 (Del.1978), stated the test as it applies to that context:

9. End Note 9 links to the same purported decision as End Note 8 from the website Justia, with the following text highlighted:

   > The facts of this case are close to those in Billops. For that reason, we believe that a jury could find that defendant retained sufficient control over 3K's daily operations that an actual agency relationship existed. The Agreement did not simply set standards that 3K had to meet. Rather, it required 3K to use the precise methods that defendant established, both in the Agreement and in the detailed manuals that the Agreement incorporated. Those methods included the ways in which 3K was to handle and prepare food. Defendant enforced the use of those methods by regularly sending inspectors and by its retained power to cancel the Agreement. That evidence would support a finding that defendant had the right to control the way in which 3K performed at least food handling and preparation. In her complaint, plaintiff alleges that 3K's deficiencies in those functions resulted in the sapphire being in the Big Mac and thereby caused her injuries. Thus, as in Peeples, there is evidence that defendant had the right to control 3K in the precise part of its business that allegedly resulted in plaintiff's injuries. That is sufficient to raise an issue of actual agency.

10. End Note 10 links to a purported copy of a ruling by a District Court Judge for the Eastern District of New York in *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83 (E.D.N.Y. 2000), *aff'd sub nom. Wu v. Dunkin' Donuts, Inc.*, 4 F. App'x 82 (2d Cir. 2001), from the website Justia, with the following text highlighted:

    > (S.D.N.Y. Jan.28, 1992) (denying under New York law a summary judgment motion brought by Holiday Inn in an action arising out of plaintiff's slip on a wet floor in a franchisee's lobby on the ground that Holiday Inn was involved in training of hotel employees and construction of building, and that it reserved a right to inspect and order upgrading at any time); Hilton v. Holiday Inns, Inc., 87-CV-1958, 1990 WL 113133 (S.D.N.Y. Aug.1, 1990) (denying under New York law a summary judgment motion brought by Holiday Inn in an action claiming damages concerning an accident involving a shuttle bus operated by franchisee's employee on the ground that Holiday Inn required that its franchisees comply with the company's standards manual).

11. End Note 11 links to the same purported decision as End Note 10 from the website Justia, with the following text highlighted:

    > "retained control over the security of the franchise restaurant." Folsom v. Burger King, 958 P.2d at 308-09. Accordingly, notwithstanding the considerable control Burger King retained to ensure "the uniformity of the Burger King system," id. at 309, the court concluded that Burger King *89 did not owe a legal duty to the plaintiffs. See id.

12. End Note 12 links to a purported copy of a decision by the Louisiana Supreme Court in *Wimberly v. Gatch*, 635 So. 2d 206 (La. 1994), from the website Justia, with the following text highlighted:

    > Generally, the doctrine of contra non valentem suspends prescription where the circumstances of the case fall into one of the following four categories:

13. End Note 13 links to the same purposed decision as End Note 12 from the website Justia, but with the following text highlighted:

    > conduct which prevents the plaintiff from availing himself of his judicial remedies. Corsey v. State, through Dept. of Corrections, supra; Whitnell v. Menville, supra; Plaquemines Parish Com'n Council v. Delta Development Co., Inc., supra. The cause of action accrued, but plaintiff was prevented from enforcing it by some reason external to his own will. Corsey v. State, through Dept. of Corrections, supra. The fourth category, commonly known as the discovery rule provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Griffin v. Kinberger, 507 So. 2d 821 (La.1987); Lott v. Haley, 370 So. 2d 521 (La.1979). Hence, prescription *212 does not accrue as it does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. In Re Medical Review Panel of Howard, 573 So. 2d 472 (La.1991); Young v. Clement, 367 So. 2d 828 (La.1979).

14. End Note 14 links to a decision by the United States Court of Appeals for the Fifth Circuit in *Brown v. City of Cent.*, No. 23-30146, 2024 WL 546340 (5th Cir. Feb. 12, 2024).

15. End Note 15 is never cited in the body of Plaintiff's Opposition, but links to the Louisiana Legislature's website. However, the link does not work correctly:

> **An Error Occurred on This Page**
> The Document ID parameter ('d') is missing or invalid. Please contact this site's web-master.

16. End Note 16 is never cited in the body of Plaintiff's Opposition, but links to a Report and Recommendation entered by Magistrate Judge Erin Wilder-Doomes in *Williams v. Entergy Servs. LLC*, No. 23-CV-1645-JWD-EWD (M.D. La. June 25, 2024), 2024 WL 3381894, report and recommendation adopted, No. 23-CV-1645-JWD-EWD (M.D. La. July 11, 2024), 2024 WL 3381255. It is unclear how this decision supports Plaintiff's Opposition. While *Williams* did involve an EEOC claim, the plaintiff did not assert a LUTPA claim, the doctrine of *contra non valentem* was not at issue, and no claim was made against a franchisor.

17. End Note 17 is never cited in the body of Plaintiff's Opposition, but links to a purported copy of a ruling on a motion for summary judgment by District Judge John Parker in *Langley v. Pinkerton's Inc.*, 220 F. Supp. 2d 575 (M.D. La. 2002), from the website Justia, the word "prescription" highlighted. It is unclear how this decision supports Plaintiff's Opposition. While *Langley* did involve an EEOC claim, the plaintiff did not assert a LUTPA claim, the doctrine of *contra non valentem* was not at issue, and no claim was made against a franchisor.

18. End Note 18 is never cited in the body of Plaintiff's Opposition, but links to a purported copy of a ruling on a motion to dismiss by District Judge Mary Ann Vial Lemmon in *Colon v. Dillard Univ.*, No. 16-CV-1819 (E.D. La. Sept. 2, 2016), 2016 WL 4593770, from the website Justia. It is unclear how this decision supports Plaintiff's Opposition. While *Colon* did involve an EEOC claim and *contra non valentem*, the plaintiff did not assert a LUTPA claim, and no claim was made against a franchisor. Notably, in *Colon*, the court rejected the plaintiff's attempt to invoke the protections of *contra non valentem*.

19. End Note 19 links to a ruling by Magistrate Judge Michael Hill on a motion for summary judgment in *McClung v. Shell Chem., LP*, No. 11-CV-0263 (M.D. La. Sept. 25, 2012), 2012 WL 4460761.

20. End Note 20 links to a ruling by District Judge Jane Milazzo on a motion to dismiss in *Imbornone v. Tchefuncta Urgent Care, Inc.*, No. 11-CV-3195 (E.D. La. Aug. 15, 2012), 2012 WL 3440136.

21. End Note 21 links to the same ruling as End Note 19.

22. End Note 22 is never cited in the body of Plaintiff's Opposition, but links to the same decision as End Note 14.

**B. Exhibits 1 and 2 attached to the Opposition should be disregarded.**

In deciding a motion to dismiss, the Court should only consider documents that are essentially "part of the pleadings." That is, any documents attached to or incorporated in the plaintiff's complaint that are central to the plaintiff's claim for relief. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000)).

Although neither Choice's Form 10-K (from 2017) nor its Code of Ethics are material to whether Plaintiff possesses a cause of action against Choice, Choice must object to consideration of these documents as neither were referenced in nor attached to Plaintiff's complaint. However, to whatever extent these exhibits are considered, neither alter the analysis nor argument below, as neither exhibit establishes that Choice exercises any control over its franchisee's hiring process.

**C. Plaintiff did not allege that Choice was a "joint employer" in her Complaint.**

Twice in her Opposition, Plaintiff argues that Choice may be liable as a "joint employer." *See* Opposition, at p. 4 ("Choice May Be Liable as an Employer or Joint Employer Under the ADA and LEDL")[2] and p. 6 ("Plaintiff plausibly alleges that Choice is a joint employer or agent."). However, a review of her complaint reveals that she never alleged that Choice is a "joint employer" or that Choice, as franchisor, and Constitution Hotel,[3] as franchisee, are a "single integrated enterprise or single employer." Nonetheless, assuming Plaintiff's scant factual allegations against Choice constitutes an allegation that Choice and Constitution Hotel are a "single integrated

---

[2] Americans with Disabilities Act ("ADA"); Louisiana Employment Discrimination Law ("LEDL").
[3] Constitution Hotel, LLC d/b/a Comfort Inn University Area ("Constitution Hotel").

Page **5** of **10**

enterprise or single employer" (which is denied), the allegations still fall far short of stating cause of action against Choice.

"[E]ven if a company is not a plaintiff's formal employer, it may still be covered under the ADA if it acted as a 'joint employer.' *Mascarella v. CPlace Univ. SNF, LLC*, No. 13-CV-642-SDD-RLB (M.D. La. May 20, 2015), 2015 WL 2414518, at *5. In *Mascarella*, this Court explained the "joint employer" doctrine for purposes of an alleged ADA or LEDL violation as follows:

> A company becomes "a joint employer when it, 'while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.' *Boutin*, 730 F.Supp.2d at 680 (quoting *Virgo*, 30 F.2d at 1360). Because the Fifth Circuit has not formally defined the control factors to consider, this Court will follow the approach of at least two district courts in this Circuit and use the factors set forth by the Second Circuit. *See Boutin*, 730 F.Supp.2d at 680 (citing *AT&T*, 67 F.3d at 451); *Jones v. TV Minority Co.*, No. 3:07–cv–513–WHB–LRA, 2008 WL 4279581, at *4 (S.D.Miss. Sept.11, 2008) (citing *AT&T*, 67 F.3d at 451), *aff'd sub nom. Jones v. Norfolk S. Co.*, 348 F.App'x 970 (5th Cir. 2009) (per curiam). Those five factors are "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *AT&T*, 67 F.3d at 451 (citing *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 138–39 (2d Cir.1985)).

*Mascarella*, 2015 WL 2414518, at *5 (quoting *EEOC v. Valero Refining–Texas, L.P.*, No. 10–CV–398 (S.D.Tex. Mar. 13, 2013), 2013 WL 1168620 at *3. Applying these factors, Plaintiff has not alleged (nor is there any evidence) that Choice "did the hiring and firing," that Choice "directly administered any disciplinary procedures," that Choice "maintained records of hours, handled the payroll, or provided insurance," that Choice "directly supervised the employees," or that Choice "participated in the collective bargaining process." Rather, Plaintiff vaguely complains that Choice did not intervene when Plaintiff complained of the alleged discrimination (*see* Doc. 26, at ¶¶16-17) and alleges that Choice has generalized control over its franchisees through brand

standards and investment interests and receives revenue from franchise operations (*see* Doc. 26, at ¶18). Accordingly, Plaintiff has not stated a cause of action against Choice as a "joint employer" or "single integrated enterprise or single employer".

**D. Plaintiff rightly acknowledges that at issue is whether Choice exercised control over the hiring process and the employee's conduct.**

Plaintiff correctly recognizes that "[t]he Fifth Circuit applies a hybrid common-law and economic-realities test to determine employer status; the most important factor is the right to control the employee's conduct, including job application procedures and training", and that "[c]ourts consider who has the power to hire and fire, supervise the work, and control employment conditions[.]" *See* Opposition, at p. 4; *see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015). Plaintiff argues that Choice mandates training for its franchisees and general managers, and concludes that such training is evidence of Choice's control over the franchisee's daily operations. Plaintiff's argument is misplaced.

Plaintiff's reliance on *Miller v. McDonald's Corp.*, 150 Or. App. 274, 280, 945 P.2d 1107, 1110 (1997) is misplaced. First, at issue in *Miller* was an application of Oregon law, not Louisiana or federal law. Second, at issue in *Miller* was whether McDonald's (as franchisor) could be held vicariously liable for injuries the plaintiff allegedly sustained at a McDonald's franchise location. The court's analysis in *Miller* is therefore not binding or even instructive to this matter.

Plaintiff's reliance on *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83 (E.D.N.Y. 2000), *aff'd sub nom. Wu v. Dunkin' Donuts, Inc.*, 4 F. App'x 82 (2d Cir. 2001) and *Folsom v. Burger King*, 135 Wash. 2d 658, 958 P.2d 301 (1998) are similarly misplaced. At issue in *Wendy Hong* was an application of New York law and whether Dunkin' Donuts (as franchisor) could be held vicariously liable for injuries to a plaintiff who was alleged raped and assaulted by an employee of the franchisee restaurant. At issue in *Folsom* was an application of Washington

law and whether Burger King (as franchisor) could be held vicariously liable for injuries to family of an individual who was alleged murdered during a robbery at a franchisee restaurant. Nevertheless, the courts in both *Wendy Hong* and *Folsom* granted summary judgment in favor of the franchisor.

Here, Plaintiff's allegations are more akin to those raised in *Bloom v. Bexar Cnty., Tex.*, 130 F.3d 722, 725 (5th Cir. 1997). Here, Plaintiff has not alleged that Choice had any control or authority over its franchisee's "job application procedures" or over "the hiring, advancement, or discharge of employees, employee compensation, job training, [or] other terms, conditions, and privileges of employment." *Id*. (quoting 42 U.S.C. § 12112).

Importantly, some level of oversight by a franchisor does not automatically make the franchisor liable for discrimination by its franchisees. *See, e.g., Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir. 1995). In *Neef*, a disabled customer brought an action against a restaurant franchisor, alleging violation of the ADA. The District Court granted the franchisor's motion for summary judgment and the customer appealed. The Fifth Circuit held that the restaurant franchisor's right under franchise agreement to set standards for building and equipment maintenance and to "veto" proposed structural changes did not make it "operator" of restaurant for purposes of ADA's prohibition on discrimination in public accommodations. *Id*.; *see also Louviere v. Carewell Hosp., LLC*, No. CV 18-6419 (E.D. La. Dec. 2, 2019), 2019 WL 6464978, at *3 (dismissing discrimination claim against franchisor by employee of franchisee).

**E. Discussion of liability for AI Hiring Tools and Algorithmic Bais are a red herring and irrelevant.**

Starting on page 11 of Plaintiff's Memo, Plaintiff spends nearly two pages discussing an employer's liability for the use of AI in its hiring practice. Then, beginning near the end of page 12, Plaintiff discusses enforcement and guidance by the FTC on "algorithmic bias." Plaintiff's

complaint is devoid of any allegations, or even suggestion, that AI or an algorithm was used in Constitution's hiring process. As such, it is unclear why this issue was raised in Plaintiff's Opposition.

### F. Plaintiff's LUTPA claims are prescribed.

In her Opposition, Plaintiff argues that her LUTPA claim was suspended due to the pendency of her EECO complaint. This argument is misplaced. While the ADA **requires** a plaintiff to file a charge with the EEOC and obtain a right-to-sue letter, thereby tolling prescription (*see, e.g., Dao v. Auchan Hypermarket*, 96 F.3d 787, 788 (5th Cir. 1996)), and the LEDL expressly contemplates that the prescriptive period for a claim under the LEDL is suspended during the pendency of any administrative review or investigation (*see* La. R.S. 47:23:303(D)), no such requirement or provision exists for LUTPA claims. Indeed, LUTPA does not require administrative exhaustion nor does the statutory construct of LUTPA contemplate that a claim under LUTPA would be suspending during the pendency of an administrative review or investigation. Furthermore, *contra non valentem* does not apply here as Plaintiff's complaint is devoid of any allegations that she "discovered" any additional facts after August 2022.

### G. Even if not time barred, Plaintiff failed to state a claim under LUTPA.

Even if not prescribed, the factual allegations contained in Plaintiff's complaint are inadequate to state a cause of action against Choice under LUTPA. As analyzed by this Court in *Galarza v. Ochsner Health Sys., Inc.*, employment discrimination claims generally do not fall under LUPTA. No. 12-CV-722-JJB (M.D. La. Apr. 14, 2014), 2014 WL 1431708, at *10. Indeed, "under LUTPA, a plaintiff must show that the defendant engaged in unfair methods of competition or committed unfair or deceptive trade practices in the conduct of trade or commerce." *Id*. (citing *Harris v. Poche*, 930 So.2d 165, 171 (La. App. 4 Cir. 2006). Employment discrimination claims

do not "concern acts occurring 'in the conduct of trade or commerce.'" *Id*. (quoting La. R.S. 51:1405(a)). "LUTPA seeks only to protect consumers and business competitors, and to deter injury to competition." *Id*. (citing *Landreneau v. Fleet Financial Group*, 197 F.Supp.2d 551, 557 (M.D. La. 2002)). An employment discrimination plaintiff is neither a consumer nor a business competitor. *Id*. Accordingly, Plaintiff's LUTPA claims fail as a matter of law.

## CONCLUSION

For all of these reasons, Choice's Rule 12(b)(6) Motion to Dismiss should be granted, dismissing all claims by Plaintiff against Choice, with prejudice.

Respectfully submitted,

**FAIRCLOTH MELTON BASH & GREEN, LLC**

By:   */s/ Franklin "Drew" Hoffmann*
Lottie L. Bash (La. #26186)
lbash@fairclothlaw.com
105 Yorktown Drive
Alexandria, Louisiana 71303
Phone: (318) 619-7755
Fax: (318) 619-7744

Franklin "Drew" Hoffmann (La. #35824)
dhoffmann@fairclothlaw.com
Emily R. Fruge (La. #40367)
efruge@fairclothlaw.com
Phone: (225) 343-9535

**ATTORNEYS FOR DEFENDANT,
CHOICE HOTELS INTERNATIONAL, INC.**